IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 18, 2008

## JACKIE GLENN ALLEN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lincoln County**
**No. S0700088     Robert G. Crigler, Judge**

---

**No. M2007-02722-CCA-R3-PC - Filed July 3, 2008**

---

The Petitioner pled guilty to rape and incest and agreed to allow the trial court to sentence him. After a sentencing hearing, the court imposed an effective sentence of ten and one-half years to be served in the Tennessee Department of Correction. The Petitioner appealed the sentence, and this Court affirmed. The Petitioner then filed his petition for post-conviction relief claiming that he did not receive the effective assistance of counsel and that his guilty plea was not entered knowingly or voluntarily. The post-conviction court denied the petition for post-conviction relief, and, after a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

S. Craig Moore, Fayetteville, Tennessee, for the Appellant, Jackie Glenn Allen.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Preston Shipp, Assistant Attorney General; Charles F. Crawford, Jr., District Attorney General; Hollyn Hewgley, Assistant District Attorney General, for the Appellee, the State of Tennessee.

**OPINION**

**I. Facts**

On direct appeal, this Court recited the facts from the guilty plea hearing as follows:

[O]n or about October 30, 2004, [the Petitioner], who is the father of [J.A.],
. . . were at their residence here in Lincoln County, Tennessee when the father, [the

Petitioner], entered the bedroom.

[J.A.], who is 15 years old, was on her bed and was preparing to go to sleep and was very sleepy. At some point while he was on the bed talking to her, he pulled her underwear to the side and had sexual intercourse with her against her will.

This was later reported to officers at the Lincoln County sheriff's department.

The officers did collect the panties that [J.A.] had on the night that this incident occurred.

A DNA test was conducted of the semen found on the panties. It was a positive match for the father, [the Petitioner].

[The Petitioner] also came to the sheriff's department and did confess to this crime. He is the biological father of [J.A.].

*State v. Jackie Glenn Allen*, No. M2005-02808-CCA-R3-CD, 2006 WL 2380613, at *1 (Tenn. Crim. App., at Nashville, Aug. 16, 2006), *no Tenn. R. App. P. 11 application filed*.

After the Petitioner pled guilty, the trial court conducted a sentencing hearing at which the Petitioner's grandmother and great-aunt testified. *Id*. Each "testified regarding the [Petitioner's] impoverished and abused childhood" and that he was "extremely" remorseful for his actions. *Id*. "Following the presentation of evidence, the trial court imposed concurrent sentences of ten years and six months for the rape conviction and five years for the incest conviction." *Id*. The trial court based its sentence on four enhancement factors: (1) the Petitioner's history of criminal convictions or behavior; (2) the victim's vulnerable age; (3) the offense was committed to gratify the Petitioner's desire for pleasure or excitement; and (4) the Petitioner abused a position of private trust. *Id*. at *2; *see* T.C.A. § 40-35-114(2), (5), (8), (16) (2003). The trial court denied alternative sentencing because it believed those convicted of rape were statutorily ineligible. *Allen*, 2006 WL 2380613, at *4.

On appeal, this Court concluded that the trial court erred in the following: (1) by enhancing the sentence based on the victim's age because the State did not prove she was particularly vulnerable; and (2) by enhancing the sentence based on the "pleasure or excitement" factor because the State failed to provide objective evidence to support it. *Id*. at *3-4. Nevertheless, this Court concluded that the effective ten and one-half year sentence was appropriate. *Id*. at *4. In addressing alternative sentencing, this Court concluded that those convicted of rape were technically eligible for alternative sentencing but only if the sentence was less than ten years. *Id*. As the Petitioner's sentence was more than ten years, he was ineligible for an alternative sentence. *Id*. This Court thus affirmed the trial court's judgments.

After this Court's decision, the Petitioner filed his petition for post-conviction relief,

2

claiming: (1) that he received ineffective assistance from his counsel; and (2) that he did not enter his guilty plea knowingly and voluntarily. At the post-conviction hearing, the parties presented the following evidence: the Petitioner testified that, after he was charged, he gave a statement to the sheriff's department. He stated that he believed he was under arrest because he felt as though he was not free to leave. After the sheriff's department "tricked [him] into saying what they wanted [him] to say," they requested he sign a *Miranda* waiver, which he did. He stated that, when he signed the forms, the times were not written on them. The Petitioner's trial counsel ("Counsel") filed a motion to suppress the statement, but he later dropped the motion without explanation.

Additionally, the Petitioner explained how his DNA was transferred onto his daughter's panties: prior to church on Sunday, he and his wife had intercourse. The Petitioner's wife went into the bathroom where she undressed, laying her undergarments, which contained the Petitioner's DNA, on top of their daughter's undergarments. The Petitioner claimed Counsel told him that his story would not matter. The Petitioner also complained that the Our Kids medical report contained no evidence of a rape, yet it was not suppressed. The Petitioner testified that, had he known Counsel could have attempted to have these things suppressed, "[i]t would have changed [his] mind a whole lot."

By way of further explanation, the Petitioner stated that the State offered him an eight year sentence, apparently to be served day-for-day. Counsel informed the Petitioner that the trial court could sentence him to an alternative sentence if the sentence was less than ten years. Because he wished to receive probation or community service, the Petitioner turned down the eight year sentence and allowed the trial court to sentence him. The Petitioner stated, "[M]y understanding was, I might could spend a few years in prison, then get out on probation, or the Judge could give me probation or community service." The Petitioner also stated that he pled guilty to avoid putting his family through additional stress, and he felt coerced by Counsel who did not want to go to trial. The Petitioner stated that, had he known he would be ineligible for an alternative sentence, he would not have pled guilty.

On cross-examination, the Petitioner admitted that, when he began talking with the sheriff's department and the Department of Children's Services ("DCS"), he told them he knew why he was there. The Petitioner admitted giving a statement, but he testified the statement was "not right" because he did not rape his daughter.

Counsel testified that he and the Petitioner discussed whether his statement to police was freely and voluntarily made. He spoke with the officer and DCS representative who explained to him that the Petitioner came to the station and was asked if he knew why he was there. The Petitioner responded that it was because of charges that he sexually molested his daughter. The officer then advised the Petitioner of his *Miranda* rights, after which the Petitioner made a statement that was consistent with the description of the incident given by the victim. This signaled to Counsel that the Petitioner would have a difficult time at trial. After considering this, in addition to the Petitioner's story about the transfer of DNA from one set of panties to another, Counsel advised him that his best option would be to plead guilty. Counsel explained to the Petitioner that, because the

3

law allowed alterative sentencing for sentences of ten years or less, he would be eligible for an alternative sentence. Counsel testified that he advised the Petitioner, though, that this was "highly unlikely."

On cross-examination, Counsel stated that, pursuant to his investigation, the officer asked the Petitioner to come to the police station. The Petitioner drove himself there voluntarily, and, when asked if he knew why he was there, he responded affirmatively. He then proceeded to admit to what happened. Counsel believed that the Petitioner was read his *Miranda* rights before he made his admission.

In addressing the transfer of DNA, Counsel admitted he did not talk with the Petitioner's wife about the story, but he did discuss the issue with the DNA expert who said such a transfer was unlikely. Counsel stated that he found no legal basis to suppress the panties or the Our Kids medical report because the panties were legally taken into evidence and the report was an exception to the hearsay rule.

The post-conviction court ruled there was no basis to suppress the spontaneous statements made by the Petitioner, and any motion would have been frivolous. The court also noted that the Petitioner contradicted himself a number of times, and, as such, the court found that the Petitioner was not credible when he testified that he would not have pled guilty had he known he would not receive an alternative sentence. Accordingly, the post-conviction court denied the petition for post-conviction relief.

## II. Analysis

The Petitioner's claim for post-conviction relief is based on two separate issues. The Petitioner claims that: (1) Counsel was ineffective in failing to move to suppress the Petitioner's statement to police; and (2) he did not knowingly or voluntarily enter his guilty plea because he believed, based on advice from Counsel, that the trial court would sentence him to an alternative sentence. In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457. We will discuss each issue in turn.

## A. Effective Assistance of Counsel

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515

5

(citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *accord Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The Petitioner's ineffective assistance of counsel claim is based on his belief that his statement to the police should have been suppressed because the police did not read him his *Miranda* rights prior to his statement. Generally speaking, *Miranda v. Arizona*, 384 U.S. 463 (1966), requires that a suspect be read certain rights prior to "custodial interrogation." *Id*. at 444; *accord Dickerson v. United States*, 530 U.S. 428 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). The post-conviction court concluded that the statement was given before the Petitioner was "in custody." There was no basis, therefore, for a suppression motion.

Because the post-conviction court found the Petitioner not credible, we will address this issue using Counsel's version of the facts. The officer requested the Petitioner come to the police station, and the Petitioner drove himself there voluntarily. When he arrived, the officer asked him if he knew why he was there. The Petitioner responded, "yes," that he believed it dealt with the sexual molestation of his daughter. Counsel testified that, based on his investigation, the officer then read the Petitioner his *Miranda* rights and obtained a written statement. Under Counsel's version of the facts, the only statement made before the officer read the Petitioner his rights was his statement that he believed he was called to the police station in order to answer accusations that he molested his daughter.

In *Miranda*, "custodial interrogation" was defined by the Court as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 530 U.S. at 444. A person is "in custody" within the meaning of *Miranda* if there has been "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal citations omitted); *accord Yarbrough v. Alvarado*, 541 U.S. 652, 653 (2004). *Miranda* has been held not to apply "outside the context of inherently coercive custodial interrogations for which it was designed." *Roberts v. United States*, 445 U.S. 552 (1980).

The Tennessee Supreme Court has identified several factors used to determine whether the police subjected a suspect to "custodial interrogation":

> Some factors relevant to that objective assessment include the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of

6

questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

*State v. Anderson*, 937 S.W.2d 851, 855 (Tenn. 1996).

Although the questioning took place at the police station, the duration was very short, and the suspect transported himself to the station. The Petitioner presented no evidence that he was restrained from leaving or that the officer's tone was particularly harsh. We conclude that the law support's the post-conviction court's determination that the Petitioner was not "in custody" at the time he made this statement. The actions of the police fully comply with the requirements of *Miranda*, and Counsel had no basis to suppress the statement. There being no basis to suppress the statement, Counsel was not deficient in withdrawing his motion to suppress the statement. The Petitioner is not entitled to relief on this issue.[1]

## B. Knowing and Voluntary Plea

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances include:

the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

---

[1]In passing, the Petitioner makes reference to Counsel's failure to suppress the Our Kids medical report and the victim's panties. We see no need to address these claims in depth because the Petitioner failed to make any argument or present any basis for excluding the evidence.

In this claim, the Petitioner alleges that he was told he would be eligible for alternative sentencing after he pled guilty. He stated, "[M]y understanding was, I might could spend a few years in prison, then get out on probation, or the Judge could give me probation or community service." Counsel testified that, because rape carried a minimum sentence of eight years, the Petitioner would be eligible for an alternative sentence, although probation was unlikely. This is precisely what we held on the Petitioner's direct appeal. In pleading guilty to rape, the Petitioner allowed the trial court to set his sentence. The range for the sentence was eight to twelve years. A sentence between eight and ten years would make the Petitioner a candidate for an alternative sentence, and anything above ten years would not. As Counsel properly and precisely explained to the Petitioner his options, the Petitioner has not proved that his guilty plea was not knowing and voluntary. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude that the Petitioner has not proved that he failed to receive the effective assistance of counsel or that his plea was not made knowingly or voluntarily. The judgment of the post-conviction court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE